*ABBBN, P.,
after stating the case, proceeded:
The first question arising upon the foregoing statement is, whether a corporation is liable as a garnishee under the attachment law. In the argument here, however, the counsel of the company contended, that no suit whatever could be maintained against this corporation in the courts of Virginia: First, because it is a foreign corporation, and therefore not liable to be sued without the jurisdiction of the state which created it; and second, because no mode is provided by our law for the service, of process upon it.
*755 The first ground it seems to me is settled by the act of March 8th, 1827, entitled an act to confirm a law passed at the present session of the general assembly of Maryland, entitled an act to incorporate the Baltimore and Ohio railroad company. The préamble recites that whereas an act has passed the legislature of Maryland, entitled an act to incorporate the Baltimore and Ohio railroad company, in the following words and figures, viz: The act of incorporation is then set out, conferring a corporate name, with all the powers, rights and privileges which other corporate bodies may lawful^ do for the purposes mentioned in the said act, and providing that by that name it should be capable of purchasing, holding, selling and conveying property; and may sue and be sued. And after thus reciting the Maryland act of incorporation, the Virginia law proceeds to enact, “that the same rights and privileges shall be and are herebj' granted ,to the aforesaid company within the territory of Virginia, as are granted to them within the territory of Maryland; the said company shall be subject to the same pains, penalties and obligations as are imposed by said act, and the same rights, privileges and immunities which are reserved to the state of Maryland or to the citizens thereof, are hereby reserved to the state of Virginia and her citizens. ’ ’ *The company under this law is a Virginia corporation, and its powers within the territory of Virginia are derived from the grant contained in the Virginia law. The act of Maryland incorporated the subscribers to the capital stock, their successors and assigns, by the name designated ; and the Virginia act in effect re-enacts the Maryland law in all essential particulars; thereby erecting the company into a Virginia corporation within her territory. If liable to be sued in Maryland, the same liability attaches to it in Virginia. It is judicially known to the court that the road traverses the territory of Virginia to a greater extent than it does through the state of Maryland. Throughout its whole course vast expenditures would be necessary in the construction, preservation and working of the road, innumerable contracts would be entered into, controversies would necessarily arise out of the contracts, acts and omissions of the company and its agents; and it would be a startling proposition if in all such cases citizens of Virginia and others, should be denied all remedy in her courts for causes of action arising under contracts and acts entered into or done within her territory; and should be turned over to the courts and laws of a sister state to seek for redress. Such a construction wotild give the company almost entire immunity for its contracts and acts over most of the road, and would exempt its property in the territory of Virginia from all liability to its creditors: For process of execution from the courts of Maryland could not avail in Virginia.
The subsequent legislation of the state shows that the legislature has uniformly treated it as a Virginia corporation, exercising the same controlling power over it as over other corporations deriving their existence from the laws of Virginia. By the act of March 1847, Sess. Acts, p. 86, the company was authorized to complete the road through the territory of Virginia *over a route thereby prescribed ; and by the 6th section of this law it was subjected to the provisions of the general railroad law of the 11th March 1837, with respect to that portion of the road constructed within this commonwealth, so far as the same were properly applicable; and the company w'as required to accept the provisions of this act within six months, as a condition upon which the powers and privileges of the said act were granted.
Under this act, as it appears from the preamble of the act of 21st of March I860, Sess. Acts, p. 49, the company has proceeded to complete its road: Thus, with respect to that portion of the road constructed in Virginia, submitting itself to the provisions of the general law regulating railroad companies incorporated by this commonwealth.
Regarding it as a corporation of Virginia with respect to that portion of the road constructed within the commonwealth, it is unnecessary to consider what would be the effect of our legislation upon this question, even if it were still to be treated as a foreign corporation, to which certain franchises and immunities within the state were granted and liabilities imposed upon it. It has been supposed that a foreign corporation cannot be sued, because by the common law, process against it must be served upon its head within the jurisdiction where this artificial body exists. The difficulty is rather technical than substantial; and this court held in the case of the Bank of U. S. v. The Merchants Bank of Baltimore, 1 Rob. R. 573, that under our law directing the method of proceeding against absent debtors in courts of equity, a suit, might be maintained even against a foreign corporation where it has lands or tenements within the commonwealth; the proceeding being by publication instead of actual service of process. It is further argued, that even if the corporation is *to be regarded as. a Virginia corporation, its principal office is in Maryland, and its chief officer resides there; and that by the Code, ch. 169, '£ 1, it is provided that a suit may be brought in any county or corporation wherein, if a. corporation be a defendant, its principal office is, or its chief officer resides; another paragraph provides that if the suit be to recover land or subject it to a debt, the suit may be brought in the county or corporation wherein such land, estate or debts, or any part thereof, may be; and the second section authorizes a suit to be brought in any county or corporation wherein the cause of action or any part thereof arose, although none of the defendants may reside therein.
Corporations are in law, for civil purposes, deemed persons. They have power *756 to plead, be impleaded, grant or receive by their corporate names, and to do all other acts within the . purview of their corporate power, which natural persons could do. Holding land in different counties, if so empowered by its charter, it may be sued in the county wherein such land may be, though its principal office is, or its chief officer resides, elsewhere. The cause of action growing out of its contracts, acts, negligences or omissions, may arise in a different county or corporation, and suit may be brought where the cause of action arose, without reference to the residence of the defendant. The Code, p. 643, § 7, prescribes the mode of serving process against or giving notice to a corporation. It shall be sufficient to serve process against it, on the chief officer; or in his absence from the county or corporation in which he resides, or in which is the principal office of the corporation, provision is made for service on other officers of the corporation in cases of cities, towns, &c.,&c.; and then follows this general provision: “If the case be against some other corporation than a bank, and there be not in the county or corporation wherein it is commenced, any other person *on whom there can be service as aforesaid, service on an agent of the corporation against which the case is, with publication, in the mode directed, ..shall together be sufficient.” As jurisdiction is not confined to the county or corporation wherein its principal office is, or chief officer resides, so service on an agent of the corporation within the county where the suit was properly commenced, with publication in the prescribed mode, is sufficient service; there being no president, director or other chief officer of said company within the county on whom process could be served. I think, therefore, that this corporation may in a proper case be sued in the courts of this commonwealth, and that a mode is provided by law for the service of process upon it.
The next error assigned is, that the court erred in overruling the motion to discharge the attachment, the plaintiff in error insisting that a corporation is not liable as a garnishee, under the attachment laws. The objection is general; applicable to all corporations aggregate, without reference to the jurisdiction of the court over the parties or conteoversy. The Code, ch. 151, $ 2, p. 601, authorizes the plaintiff in an action at law, on proper affidavit at the time of or after the institution of the suit, to obtain from the clerk an attachment, if the suit be to recover money for a claim or damage for a wrong, against the defendant’s estate. The 7th section of the act provides that every such attachment may be levied on any estate, real or personal, of'the defendant; and that it shall be sufficiently levied by the service of a copy thereof on such persons as may be in possession of effects of or known to be indebted to the defendant. By the 9th section, such persons are to be summoned to appear as garnishees. The 12th section gives a lien from the time of service upon the personal property, choses in action and other securities of the defendant, in the *hands of or due from any such garnishee. The 17th section provides that when any garnishee appears he shall be examined on oath. If it appear on such examination, that he was indebted, the court may order him to pay the amount so due by him; or with the leave of the court he may give bond to pay the amount due by him at such time and place as the court may thereafter direct. The 18th section authorizes the court, if he fails to appear, to compel him to appear, or the court may hear proof of any debt due by him to the defendant, and make the proper order thereupon. And the 19th section authorizes a jury to be impaneled when it is suggested that the garnishee has not fully disclosed the debts due by him to, or effects in his hands of, . the defendant in such attachment; and provides for a judgment on the finding of the jury.
From this review of the material provisions of the statute bearing upon this question, there would seem to be nothing in the condition of a corporation to exempt it from being summoned as a garnishee. When the word person is used in a statute, corporations as well as natural persons are included for civil purposes. This was the rule at common law. 2 Inst. 697, 703, 736. They are to be deemed and taken as persons when the circumstances in which they are placed are identical with those of natural persons expressly included in such statutes. Beaston v. Farmers Bank of Delaware, 12 Peters’ R. 102, 134-5; U. S. Bank v. Merchants Bank of Baltimore, 1 Rob. R. 573; and the Code, ch. 16, '& 17, p. 101, clause 13, provides that the word person may extend and be applied to bodies politic and corporate as well as individuals. The general words, as to what effects, debts or estate of the defendant may be attached, would seem to embrace his whole estate, without respect to the character of the person, natural or artificial, in whose *hands the effects were, or by whom the debt was due. The corporation stands in precisely the same position in regard to such effects or debts, as a natural person. If it owes the debt or holds the effects of another, it, like an individual, is liable to be sued by its creditor or the owner of the property: and the statute merely substitutes the plaintiff in the attachment to the rights of the creditor or owner as against the garnishee. Ho change is made in its contract, or additional obligation imposed on it, by being proceeded against’ as gajrnishee. The only particular in which there is any departure from a literal compliance with the statute, is in regard to that provision of the 17th section which declares that when any garnishee shall appear, he shall be examined on oath. This clause was for the benefit of the plaintiff in the attachment. In the case of a corporation, he must receive an answer in the only mode by which the corporation can answer, under its corporate *757 seal. In chancery, where, as a general rule, all answers must be verified by oath or affirmation, a corporation must answer in the same way, though where a discovery is wanted, a practice has prevailed of making some of the officers defendants. The same result could be arrived at under the attachment law, by examining the officers as witnesses, if the plaintiff suggests that a full disclosure has not been made. This is an inconvenience to which he is subjected, growing out of the character of the garnishee, but furnishes no reason for exempting the corporation from being so proceeded against when all the other words of the statute are sufficiently comprehensive to embrace artificial as well as natural persons. The mischief intended to be remedied applies as well to debts due by them, as by individuals ; and the circumstances in which they are placed are the same as those of others embraced in the statute.
I think a fair construction of the statute authorizes *the proceeding against the corporation in a proper case; and no objection being urged to the proceeding here, except the general one, that a corporation corrld not be summoned as a garnishee on such an attachment, the motion to discharge the attachment was properly overruled.
I think, however, the verdict is defective in not responding to the issue really raised upon the answer of the garnishee. That answer, taking it all together, must, it seems to me, be construed as referring to the time of the service of the attachment. It declares in express terms, that there was no other money at the time of the service of said attachment, subject to the plaintiff’s attachment, only as above stated. Some confusion has arisen out of the provisions in the statute referring to proceedings in law and at equity under, the 2d and under the 11th sections. In attachment under the 2d section may be served, by the provisions of the 7th section, on such persons as may be in possession of effects of, or indebted to, the defendant. By the 9th section, the officer is to return with the attachment, the names of the persons having effects of or owing debts to the defendant. And the 12th section gives the plaintiff a lien from the time of service, upon the personal property, choses in action and other securities of the defendant in the hands of, or due from, the garnishee on whom it is served.
All these provisions seem to look to the time of the service of the attachment, as the period at which there should be an existing debt from the garnishee to the defendant, whether then actually payable or to be paid at a future day, it is not necessary now to enquire.
The 11th section regulating attachments in equity, authorizes the attachment upon debts due or to become due to the defendant by the other defendants. As the lien given by the 12th section extends to both classes of attachment, possibly the phrase debts to become due, *may be satisfied by limiting the expression to debts then existing, payable at a future day. This construction would render the provision of the 11th section consistent with the 12th section giving the lien. The 17th section applies to both courts, and provides, if on such examination (referring to the examination of the garnishee on oath when the proceeding is under the 2d section at law), or by his answer to a bill in equity, it appear at or after the service of the attachment he was indebted to the defendant, &c.
Unless the attachment at law is to be extended so as to embrace existing debts payable in future, and the attachment in equity restricted to debts of the same character, there would be some difficulty in applying these general words to both classes of attachments, and it might be necessary to read them distributively, making the attachment at law apply to debts owing at the service, and in equity at or after the service of the attachment. However this may be, as the answer of the garnishee referred to the time of the service of the attachment the verdict finding that the company was indebted on the 18th of May 1852, and after-wards, is no reply to the answer. The answer or examination may have been true, and contained a full disclosure, and yet be consistent with the verdict. There may have been no other debt to the 14th January 1852, the time of service, and' so nothing for the attachment to operate upon; but between that and the 18th of May 1852 and afterwards there may have been new contracts out of which new claims may have arisen. I think the verdict was too defective to enable the court to pronounce any judgment thereon.
I am also of opinion that the court erred in permitting evidence of the statements of James B. Randolph, the division engineer, made to the witness A. F. Haymond, to be given in evidence to the jury. There is nothing in the facts certified in the bill of exceptions, *showing that Randolph was acting within the scope of his authority in making such admissions. The conversation was with a third person not in the presence of the defendants, the said Crowleys; and the agent was not engaged in any transaction with the alleged creditors of the company, rendering it necessary to advert to the state of accounts between them ; so that the declarations cannot be treated as part of the res gestae, determining the quality of the act which they accompanied. They amount to no more than statements in reference to a state of accounts, growing out of past transactions, without its being shown that he ever was the agent to settle such accounts, and determine the state of indebtedness on the part of the company to these contractors ; or that he knew how much had been paid to them by the company; or that at that time he was the agent to settle with and pay them. His statements were nothing more than a declaration made in relation to business, concerning a portion of which he was employed as agent; and during the *758 course of such employment acquired a knowledge of the monthly estimates of work done. These declarations do not amount to proof against the company. The fact should have been proved by the agent. The bill of exceptions shows he was examined and declared he did not know how much money had been paid to the Crowleys at that time. I think there was no error in overruling the motion to discharge the attachment upon the ground that the company was not liable to be proceeded against as garnishee. But that there was error in proceeding to render judgment on the verdict of the jury, the •same being defective; and in permitting the statements of the said J. B. Randolph to the witness, as set forth in the bill of exceptions, to be given in evidence to the jury: And I am therefore for reversing and remanding for a new trial, with instructions to exclude the evidence of the ^statements of said J. B. Randolph, if again offered under the same state of facts disclosed in said bill of exceptions.
The other judges concurred in the opinion of Allen, P.
The judgment was as follows:
It seems to the court here, that the plaintiff in error is liable to be sued in the courts of this commonwealth; and that it could be proceeded against as a garnishee under the ■second section of the Code, ch. 151, p. 601. It is therefore considered by the court, that the Circuit court properly overruled the motion of the plaintiff in error to discharge it from answering to said summons as garnishee.
• It further'seems to the court here, that the issue made up by the answer of the plaintiff in error and the suggestion of the 'defendant in error that the said garnishee had not fully disclosed the debts due by it to, or effects in its hands of, the defendant, referred to the time of the service of the attachment on the garnishee; and the verdict should have responded thereto, but entirely fails to do so. Instead of ascertaining whether there were any such debts or effects due by or in the hand of the garnishee at the time of such service, it is found by the jury that the plaintiff in error has not fully disclosed the debts due by it to, or effects in its hands of, said Crowlej^s; 'and that there was a sufficient amount due to them by the plaintiffs in error on the 18th of May 1852, and also afterwards, to satisfy the plaintiff’s judgment. This verdict may consist with the answer: There may have been no more due at the time of service than the amount disclosed by the answer; and yet other debts may have been created under contracts entered into after the service of said attachment. To sanction such a finding *would be unjust to the garnishee; for although he may show he has made a full disclosure of the debts due by him to, or effects in his hands of, the defendant at the time of such service, he may be surprised by evidence of transactions which occurred after such service. , It seems, therefore, to this court, that said verdict was defective, and should have been set aside, and a new trial awarded.
And it further seems to the court here, that upon the facts set forth in the bill of exceptions taken by the plaintiff in error, that the court erred in permitting the declarations of James B. Randolph, made to the witness A. R. Haymond, and set out in the bill of exceptions, to be given in evidence to the jury; it not appearing that said Randolph was the agent of the plaintiff in error having any authority over this subject, or that at the time of making the declarations he was engaged as agent about the business referred to, so as to make his declarations part of the transaction, explaining the nature thereof.
It is therefore considered by the court, that said judgment is erroneous. It is therefore reversed with costs, the verdict set aside, and the cause remanded, with instructions to impanel another jury to en-quire as to the debts due by the plaintiff in error to, or effects in its hands of, the said Crowleys at the time of the service of the attachment; and upon such enquiry and trial the declarations of the said Randolph, as set out in the bill of exceptions, if again offered in connection with the facts disposed in the bill of exceptions, and no other proof, are not to be permitted to go in evidence to the jury if again objected to by the plaintiff in error.